[Cite as *State v. Jones*, 2022-Ohio-3162.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29214 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-3501 |
| | : | |
| KARLTON STEPHONE JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Karlton Stephone Jones appeals from his conviction following a jury trial on one count of murder with a firearm specification.[1]

{¶ 2} Jones advances four assignments of error. He contends the trial court erred by not instructing the jury on Ohio's "castle" doctrine. He claims the prosecutor improperly cross-examined him about illegally possessing a handgun. He also challenges the legal sufficiency and manifest weight of the evidence to convict him. Finally, he asserts that the trial court erred in not instructing the jury on Ohio's "stand-your-ground" law.

{¶ 3} We conclude that the trial court abused its discretion in failing to instruct the jury on R.C. 2901.05(B), which has been recognized as part of the castle doctrine and which in certain circumstances creates a rebuttable presumption that a person using defensive deadly force has acted in self-defense.

{¶ 4} The trial court's judgment will be reversed, and the case will be remanded for further proceedings.

## I. Background

{¶ 5} The present appeal stems from a shooting at the Eagle Ridge apartment complex on the afternoon of March 2, 2020. On that date, Jones fatally shot Chendo Buford in a parking lot. Jones does not dispute killing Buford. The only real issue at trial was whether Jones acted in self-defense.

{¶ 6} The record reflects that several friends were socializing in the parking lot shortly before the shooting. They included Buford and Eagle Ridge residents Mike Brown,

---

[1] A jury convicted Jones on three additional counts that were subject to merger as allied offenses of similar import.

Garry Wills, and Shandra Bevins. At some point, a female identified as "Casey" approached the group and inquired about buying marijuana. Brown and Buford saw Jones walking in the parking lot and called him over. Jones sold Casey a small amount of marijuana. Following the sale, Jones shook hands with Brown and Buford. What happened next was disputed at trial.

{¶ 7} Brown testified that Buford and Jones were friends and that Buford gave Jones a non-aggressive "bear hug" after the handshake. According to Brown, Jones responded by pulling a handgun from his side and brandishing it. This surprised Brown because it was apparent to him that Buford's hug was playful. Brown explained that Buford became upset and confronted Jones about pulling the weapon. Jones responded that he did not "feel like playing." He then walked to the passenger's side of a car occupied by Wills. Jones entered the car and requested a ride. Brown testified that Buford followed Jones, opened the car door, and said, "Don't you ever pull your gun on me, bro." While speaking, Buford pointed a finger toward Jones but did not hit or threaten to hit him. Brown testified that Jones responded by shooting Buford in the chest, face, and arm before fleeing on foot.

{¶ 8} Wills testified that Jones was friends with the group members. He described the relationship between Jones and Buford as being "cool" in a positive way. While Wills was in the car with his window down, he saw and heard Jones and Buford "playing." According to Wills, Buford grabbed Jones and hugged him. Jones responded by pulling out the handgun, which angered Buford. Wills testified that Jones displayed the gun but did not point it toward anyone. Jones then walked quickly to the passenger's side of the

car, got in, and asked for a ride. Wills had not offered a ride and did not expect Jones to enter the car. At that point, Buford put his hand in Jones' face and said something like, "[D]on't ever point your gun at me ever again." Buford made a similar remark three times before Jones shot him. Wills never saw a gun in Buford's possession and never saw Buford try to assault Jones in any way.

{¶ 9} Bevins testified that after Jones joined the group, she briefly went into her own apartment. When she came back outside, she saw Jones in the passenger's seat of the car being operated by Wills. Bevins heard Jones and Buford "low key arguing" and heard Buford tell Jones never to point a gun at him again. Bevins testified that the passenger-side door opened and she heard gunshots. She observed Jones with a handgun when he exited the car following the shots. Jones fled on foot, and Bevins attempted to assist Buford. Bevins did not observe any weapons in Buford's possession and did not see him try to assault Jones.

{¶ 10} Buford's mother, Elisha Burress, also testified for the prosecution. She was walking back from a store when she saw Buford near the car Wills was driving. She heard Buford say something like, "I thought we were better than that." Burress then heard gunshots and saw her son fall. Wills ran past her and, using nicknames for Jones and Buford, said, "Byrd just shot B.J."

{¶ 11} Jones testified in his own defense at trial. He explained that after selling the marijuana, he shook hands with Brown and Buford. He then walked over to the car and asked Wills for a ride. Wills declined the request. At that point, Buford approached Jones and threatened to "beat [his] ass." In an apparent reference to Jones' handgun, which

was in his pants, Buford also said, "I'll take your shit and pop you with it." Jones testified that he tried to walk away, but Buford grabbed him from behind and pinned him against the trunk of Wills' car. As Jones struggled to free himself, he felt the firearm sliding down in his pants. Jones grabbed the weapon and felt Buford's hand on it. Jones was able to remove the handgun from his pants and hold it away from Buford. He freed himself from Buford's grasp and secured the weapon in his pocket. He then opened Wills' car door and got into the passenger's seat. Jones begged Wills to drive away. Wills refused to move but did not order Jones out of the car. Jones testified that he observed a firearm in Wills' lap. At that point, the passenger's door opened and Buford leaned into the car. According to Jones, Buford poked him in the eye and reached for the firearm in Jones' pocket. Jones responded by drawing the weapon, pointing it at Buford, and firing multiple times. He then fled on foot. Police arrested him weeks later after he was found hiding under a bed in an apartment in Columbus.

{¶ 12} Following the presentation of evidence, the trial court granted Jones' request for a self-defense instruction. The trial court refused, however, to instruct the jury on the castle doctrine with regard to Jones' occupation of Wills' vehicle. The trial court also refused to instruct the jury on Ohio's stand-your-ground law.

{¶ 13} The jury found Jones guilty on two counts of murder as a proximate result of committing felonious assault (serious physical harm and deadly weapon) with firearm specifications. It also found him guilty on two counts of felonious assault (serious physical harm and deadly weapon) with firearm specifications. The trial court imposed a sentence of 15 years to life in prison for murder as a proximate result committing felonious assault

(deadly weapon), with a consecutive three years on the accompanying firearm specification. The trial court merged all other counts and specifications as allied offenses of similar import.

## II. Analysis

{¶ 14} Jones advances the following assignments of error:

**I. The trial court erred by not instructing the jury on the Castle Doctrine.**

**II. The trial court abused its discretion in allowing the State to cross examine Jones on the illegality of the gun.**

**III. The jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence.**

**IV. The trial court erred in not applying Ohio's "Stand Your Ground" law.**

{¶ 15} We begin our analysis with Jones' first and fourth assignments of error, which address the trial court's jury instructions. We review the denial of a jury instruction for an abuse of discretion. *State v. Taylor*, 2d Dist. Montgomery No. 28668, 2020-Ohio-6854, ¶ 10, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶ 16} With regard to self-defense, a person generally had a duty to retreat before using deadly force at the time of the incident in question.[2] *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 43, citing *State v. Willford*, 49 Ohio St.3d 247,

---

[2] Ohio's recently enacted stand-your-ground law eliminates this duty in most circumstances. The stand-your-ground law, which was not in effect when Jones shot Buford, will be addressed more fully below.

250, 551 N.E.2d 1279 (1990) and *State v. Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, ¶ 15. The "castle doctrine" is an exception to this rule. It relates to one component of self-defense, identifying circumstances under which a person need not retreat. *State v. Martin*, 2d Dist. Montgomery No. 27844, 2018-Ohio-3505, ¶ 20. At the time Jones shot Buford, the castle doctrine had been codified in now-former R.C. 2901.09(B) and provided that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, *and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person* has no duty to retreat before using force in self-defense or defense of another."[3] (Emphasis added.)

{¶ 17} The castle doctrine as set forth in former R.C. 2901.09(B) has no applicability in Jones' case. He was not occupying his own vehicle or a vehicle owned by an immediate family member at the time of the shooting. Instead, he was occupying a vehicle driven by Wills and owned by Wills' girlfriend.

{¶ 18} Jones' appellate argument focuses on a different statute, R.C. 2901.05, which has been recognized as part of the castle doctrine. *State v. Grant*, 2d Dist. Darke No. 2019-CA-13, 2020-Ohio-3055, ¶ 17. It creates a rebuttable presumption that a person using defensive deadly force has acted in self-defense "if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so

---

[3] As we will explain more fully later in this opinion, the stand-your-ground law modified the language of R.C. 2901.09(B) and further limited the duty to retreat. It took effect, however, on April 6, 2021, which was after the events at issue in this case.

entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force." R.C. 2901.05(B)(2). This presumption does not arise if (1) the person against whom defensive force is used has a right to be in the residence or vehicle or (2) the person using defensive force "is unlawfully, and without privilege[,]" in the residence or vehicle. R.C. 2901.05(B)(3). When the presumption does exist, the prosecution may rebut it by a preponderance of the evidence and then prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(4).

{¶ 19} "[T]he effect of the self-defense presumption is to negate the defendant's burden to produce evidence that he was not at fault, that he had a reasonable belief of imminent danger and that his only means of escape was the use of force, and that he did not violate a duty to retreat." *State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 50 (4th Dist.). "If a defendant establishes the self-defense presumption, then he need not present evidence regarding these three elements. Instead, the presumption, by definition, presumes that the defendant was not at fault, that he had a reasonable belief of imminent danger and that the only means of escape was the use of force, and that he did not violate a duty to retreat." *Id*.

{¶ 20} Here the trial court held that the presumption did not apply because (1) Jones was not lawfully in Wills' car and (2) Buford was not attempting to enter the car. Jones challenges both determinations. He asserts that he had a privilege to occupy Wills' vehicle to avoid being assaulted and potentially shot by Buford. Jones also maintains that Buford's act of leaning in and allegedly reaching for Jones' handgun constituted an

unlawful entry into the vehicle.

**{¶ 21}** Under Jones' version of events, we agree that a jury reasonably could have found that he occupied the car lawfully and that Buford unlawfully entered the vehicle by leaning in and reaching for his weapon. With regard to Jones' occupation of the car, that act would be unlawful if it constituted a trespass. The criminal trespass statute provides that no person, without privilege, shall "[k]nowingly enter * * * on the land or premises of another." R.C. 2911.21(A)(1). For purposes of the statute, a "premises" is any "place," including a vehicle. *State v. Gilbert*, 2020-Ohio-1641, 154 N.E.3d 288, ¶ 23 (2d Dist.).

**{¶ 22}** There is no question that Jones knowingly entered Wills' vehicle. The issue is whether he was privileged to do so. "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). The term "privilege" is "broader than permission as such." *See* Legislative Service Commission notes following R.C. 2901.01.

**{¶ 23}** At a minimum, a jury reasonably could have found that Jones was privileged to enter the vehicle based on an implied grant of permission arising out of his relationship with Willis. Depending on whose testimony is believed, Jones and Wills were friends, acquaintances, or something in between. Their relationship indisputably was non-adversarial, and Jones testified that he had been in Wills' vehicle two or three times before. We note too that Wills declined Jones' request for a ride but did not ask him to exit the car.

**{¶ 24}** With regard to Buford's allegedly reaching into the car to grab Jones'

handgun, a jury reasonably could have found that this act constituted an unlawful "entry" into the vehicle. Although the words "entered" and "entering" are not defined in R.C. Chapter 2901, a common dictionary definition of "enter" is "to come or go into." *See* https://www.dictionary.com/browse/enter. An issue arises, however, because Jones admits that Buford did not fully "go into" or enter Wills' car. Jones testified that Buford "ben[t] down" in the car's open doorway, reached inside the car, poked him in the eye, and grabbed for his weapon. We believe these alleged acts by Buford were enough to support a finding that he "entered" the car for purposes of R.C. 2901.05(B)(2).

**{¶ 25}** In a criminal-trespass case, this court held that an unlawful entry occurred when part of the defendant's body "broke the plane of the structure" involved. *State v. Kelly*, 2d Dist. Clark No. 2011-CA-37, 2012-Ohio-1095, ¶ 47. Other courts similarly have found an unlawful entry when any part of a defendant's body breaches or a defendant reaches into the area at issue. *State v. Woods*, 6th Dist. Lucas No. L-13-1181, 2014-Ohio-3960, ¶ 23; *State v. Cuthbertson*, 1st Dist. Hamilton No. C-75362, 1976 WL 189781 (June 1, 1976). We reach the same conclusion here. If Buford leaned and reached into Wills' car, then he "entered" it. We see nothing in R.C. 2901.05(B)(2) requiring the victim to make a full-body entry.

**{¶ 26}** Although Buford and Wills were friends, a jury also reasonably could have concluded that Buford's entry into the vehicle was unlawful. Buford ordinarily might have had an implied right to enter Wills' car based on the relationship between the two men. But Buford's alleged entry into the vehicle was not for a lawful purpose. Based on Jones' testimony, a jury could have concluded that Buford entered the car in an attempt to

commit a crime by assaulting Jones, trying to steal his firearm, and potentially shooting him. An entry to facilitate one of these offenses would be unlawful and without privilege.

{¶ 27} Finally, we note that the trial court expressed reluctance "to go down the slippery slope and allow that people can simply enter into someone's car and then shoot and kill someone simply and use the [c]astle [d]octrine as the basis for that." In response to this concern, we make two observations. First, R.C. 2901.05(B)(2) itself does not restrict whose car a defendant must be occupying to invoke the presumption of self-defense. Unlike former R.C. 2901.09(B), which required a defendant to be occupying his own or a family member's vehicle, R.C. 2901.05(B)(2) references a "vehicle occupied by the person using the defensive force."[4] The only limitation for the presumption to apply is that the defendant must occupy the vehicle lawfully, an issue we addressed above. Second, R.C. 2901.05(B)(2) does not grant a defendant a license to kill. It creates a rebuttable presumption of self-defense when a defendant who is lawfully in a vehicle kills someone who unlawfully enters or is trying to enter the vehicle. Under the statute, a defendant cannot enter any car and kill at will.

{¶ 28} Based on the reasoning set forth above, Jones was entitled to have the jury

---

[4] Parenthetically, we note that R.C. 2901.05(B)(2) does not irreconcilably conflict with former R.C. 2901.09(B) regarding whose car a defendant must be occupying. The two statutes perform different functions. Under former R.C. 2901.09(B), Jones would have had no duty to retreat, as a matter of law, if he were occupying his own or a family member's vehicle. Unlike former R.C. 2901.09(B), which took a duty to retreat entirely out of the case, R.C. 2901.05(B)(2) would have created a rebuttable presumption of self-defense because Jones lawfully was occupying any vehicle at the time of the shooting. Thus, there would have been a presumption that Jones had no duty to retreat and that the other elements of self-defense were satisfied. Unlike under former R.C. 2901.09(B), the prosecutor could have attempted to rebut the presumption of no duty to retreat by presenting evidence that Jones did have a duty to retreat, that he violated that duty, or that other elements of self-defense had not been met.

instructed on a presumption of self-defense under R.C. 2901.05(B)(2). He requested such an instruction, and the trial court erred in failing to provide it. *State v. Lambert*, 2d Dist. Montgomery No. 28655, 2021-Ohio-17, ¶ 40 (recognizing that a defendant is entitled to a requested jury instruction if it is a correct statement of law, pertinent to the evidence presented or to material issues, timely requested, and not already included in the jury charge); *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus ("After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.").

{¶ 29} We recognize that the trial court's failure to give the requested instruction is potentially subject to harmless-error analysis. *State v. West*, Ohio Slip Opinion No. 2022-Ohio-1556, __ N.E.3d __, ¶ 23, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. But "[u]nder that standard, the state 'bears the burden of demonstrating that the error did not affect the substantial rights of the defendant.' " *Id.* "An appellate court is required to reverse the conviction when the state is unable to meet its burden." *Id.*; *see also State v. LaRosa*, 165 Ohio St. 3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 40 (observing that the State bears the burden to demonstrate harmless error); *Perry* at ¶ 15 ("An appellate court must reverse a conviction if the government does not satisfy this burden; * * * Crim.R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error.").

{¶ 30} On appeal, the State does not even suggest the existence of harmless error. It argues only that the trial court properly declined to instruct the jury on the presumption

of self-defense. That being so, the State has not met its burden to demonstrate harmless error. *State v. Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, ¶ 26 (1st Dist.) ("[T]he trial court erred in failing to instruct the jury in accordance with H.B. 228. The state does not argue that the trial court's error was harmless, and we decline to conduct a harmless-error analysis of our own volition."). Even if the State had raised harmless error, we are unconvinced that the absence of an instruction on the presumption of self-defense was harmless. The only real issue in the case was whether Jones acted in self-defense, and we see an undeniable benefit to a defendant in having a jury told that he is presumed to have done so.

{¶ 31} We are aware that the trial court ultimately instructed the jury that the State bore the burden to prove beyond a reasonable doubt that Jones did not act in self-defense. The trial court gave this instruction not because of the statutory presumption but because Jones' own testimony tended to support the claim.

{¶ 32} Under R.C. 2901.05(B), there are two ways for the burden of proof to be placed on the prosecution regarding self-defense. If the statutory presumption applies, the burden of proof is on the State. R.C. 2901.05(B)(2). Absent the presumption, the burden of proof is on the State if the record contains evidence "tend[ing] to support" a self-defense claim. R.C. 2901.05(B)(1).

{¶ 33} Here Jones' own testimony constituted evidence tending to support self-defense. Therefore, the trial court placed the burden of proof on the State. It does not follow, however, that Jones was not prejudiced by the absence of an instruction on the statutory presumption of self-defense. In every criminal trial, the jury is instructed that the

defendant is presumed innocent *and* that the State must prove guilt beyond a reasonable doubt. It is not enough to instruct the jury about the burden of proof alone. In the same way, Jones was entitled to have his jury instructed (1) that he was presumed to have acted in self-defense and (2) that the State bore the burden to prove beyond a reasonable doubt that he did not act in self-defense. The power of the presumption of self-defense cannot be ignored when the instruction is warranted, just as a trial court cannot fail to tell a jury that a defendant is presumed innocent.[5] For all of the foregoing reasons, Jones' first assignment of error is sustained.

{¶ 34} We turn next to Jones' fourth assignment of error, which challenges the trial court's refusal to instruct the jury on Ohio's "stand-your-ground" law.

{¶ 35} Effective April 6, 2021, while Jones' case was pending, R.C. 2901.09(B) was amended and a new division (C) was added to the statute. As so modified, the legislation now states:

(B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

(C) A trier of fact shall not consider the possibility of retreat as a factor in

---

[5] "The purpose of using the phrase 'presumption of innocence' is to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.' " *State v. Ritchie*, 2d Dist. Montgomery No. 15792, 1997 WL 435698, *15 (July 25, 1997), quoting *Taylor v. Kentucky*, 436 U.S. 478, 485-486, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). Similarly, the purpose of an instruction on the presumption of self-defense is to safeguard against dilution of the principle that the State must present evidence to rebut the presumption and to prove the absence of self-defense beyond a reasonable doubt.

determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

R.C. 2901.09(B) and (C).

{¶ 36} The change to R.C. 2901.09(B) eliminates the duty to retreat whenever a person is anywhere he has a right to be, not just when a person is in his own or a family member's residence or vehicle. The new division (C) identifies the circumstances under which a trier of fact shall not consider the possibility of retreat. Collectively, these provisions have been referred to as the stand-your-ground law. At trial, Jones argued generally that he was entitled to a jury instruction on the stand-your-ground law. The trial court denied the request, finding that it did not have "retroactive" application.

{¶ 37} In a 2-1 decision, the Eighth District recently held that the stand-your-ground law did not have retroactive application to a defendant who committed his offenses prior to April 6, 2021 and was tried after that date. *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039. The majority reasoned that that it was a "substantive law regarding an individual's duty to retreat before using self-defense." *Id.* at ¶ 61. Focusing on R.C. 2901.09(C), the dissent found no problem with retroactive application, reasoning that the law properly could be applied prospectively to trials occurring after the statute's effective date. The dissent emphasized the language providing that "a trier of fact [at trial] shall not consider the possibility of retreat * * *."

{¶ 38} On appeal, Jones makes the same argument as the dissent in *Hurt.* He reasons that the stand-your-ground law properly has prospective application to trials

occurring after its effective date because it refers to what a "trier of fact" may consider.

{¶ 39} Based on our resolution of Jones' first assignment of error, we need not resolve the foregoing issue. Having determined that the trial court's judgment must be reversed due to its failure to instruct the jury on the presumption of self-defense, we are not required to determine whether the trial court also erred in failing to instruct the jury on the stand-your-ground law. Our analysis above renders that issue moot. In any event, Jones' argument is unpersuasive. This court recently held in *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, that the stand-your-ground law's changes to R.C. 2901.09 do not apply to a defendant who committed her offenses prior to April 6, 2021 and who was tried after that date. In *Degahson*, we concluded that such a defendant is not entitled to a stand-your-ground jury instruction. *Id.* at ¶ 16-24. We reasoned that the amended language of R.C. 2901.09 was not made retroactive. *Id.* at ¶ 17. We further reasoned that it could not be made retroactive because it is substantive in nature. *Id.* at ¶ 18-20. Finally, we determined that R.C. 1.58 compelled application of the former version of R.C. 2901.09. *Id.* at ¶ 22. Based on *Degahson*, we conclude that the trial court did not err in failing to apply the stand-your-ground law in Jones' case.

{¶ 40} We note too that the parties' dispute about whether Jones is entitled to a stand-your-ground instruction negating any duty to retreat appears to be of largely academic interest. It does not appear to us that Jones reasonably could have "retreated" from Wills' vehicle under either party's version of events. The parties agree that Jones was in the passenger's seat of Wills' car. Wills was in the driver's seat, and Buford was either standing at the passenger's door or actively leaning and reaching into the

passenger's side of the car. We fail to see how Jones, who was seated between Wills and Buford, reasonably could have retreated to another location. In any event, we overrule Jones' fourth assignment of error for the reasons explained above.

{¶ 41} In his second assignment of error, Jones contends the trial court erred in allowing the State to cross-examine him about his illegal possession of a firearm. He argues that evidence about his unlawful possession of the weapon should have been excluded under Evid.R. 404(B) and that it was neither relevant nor admissible for any proper purpose.

{¶ 42} In response, the State claims Jones' cross-examination testimony was relevant to the self-defense issue and admissible under Evid.R. 404(B) because it was used for a proper purpose and not to show his propensity to act in conformity with a character trait.

{¶ 43} Over Jones' objection, the trial court allowed the State to elicit testimony about his illegally taking the firearm from another person days earlier and carrying it without a permit. It is unclear to us how these facts were relevant to any material issue in this case or what proper purpose the testimony may have served. On appeal, the State suggests that Jones' self-defense claim placed at issue how and where he was carrying the firearm. In particular, the State reasons that if Jones had the firearm concealed in his pants, then Buford could not have seen it. The State claims this is relevant because Jones testified that Buford saw his handgun and threatened to shoot him with it.

{¶ 44} At trial, the State did cross-examine Jones about where he was carrying the firearm and whether it was fully or partially concealed. We agree with the State that this

testimony was relevant to Jones' claim that Buford saw the weapon and threatened to shoot him. But testimony about whether Jones carried the firearm fully or partially concealed is not the same as testimony that he had obtained the weapon unlawfully and was carrying it without a permit. In any event, we need not definitively resolve this issue. Having found Jones entitled to reversal of the trial court's judgment on other grounds, we overrule his second assignment of error as moot.

{¶ 45} In his third assignment of error, Jones challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. Relying on his own testimony, Jones contends the record demonstrates that he acted in self-defense and, therefore, that the jury's guilty verdicts were not supported by legally sufficient evidence and were against the weight of the evidence.

{¶ 46} Upon review, we note that our resolution of Jones' first assignment of error renders his manifest-weight argument moot. Having found that the trial court's judgment must be reversed due to the absence of a jury instruction on the presumption of self-defense, we need not address whether the weight of the evidence supported Jones' conviction. *State v. Dillon*, 2016-Ohio-1561, 63 N.E.3d 712, ¶ 51 (2d Dist.). Jones' argument is not moot, however, insofar as he contends the State presented legally insufficient evidence. If that assertion were correct, he could not be retried. *State v. Harr*, 158 Ohio App.3d 704, 2004-Ohio-5771, 821 N.E.2d 1058, ¶ 142 (2d Dist.) (recognizing that "a defendant may not be retried after a judgment has been determined to be based on insufficient evidence"). Therefore, we must address the legal sufficiency of the evidence.

{¶ 47} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 48} With the foregoing standards in mind, we conclude that Jones' conviction was supported by legally sufficient evidence. The jury's guilty verdicts turned on whether it found self-defense applicable. Jones admitted shooting and killing Buford, and there was no other real issue in the case. The State presented evidence that Buford never assaulted or threatened to hit Jones prior to the shooting. According to the State's witnesses, Buford approached the passenger's side of Wills' car and told Jones not to pull a gun on him again. Although the State's evidence established that Buford was pointing a finger at Jones, none of the State's witnesses testified that Buford reached inside the car to grab Jones' firearm. According to the State's witnesses, Jones responded to Buford by shooting him multiple times.

{¶ 49} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found no self-defense and could have found the essential elements

of the charges against Jones proven beyond a reasonable doubt. Jones' third assignment of error is overruled insofar as he challenges the legal sufficiency of the State's evidence. The assignment of error is overruled as moot insofar as it raises a manifest-weight argument.

## III. Conclusion

{¶ 50} Having sustained Jones' first assignment of error, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Lucas W. Wilder
Hon. Mary E. Montgomery