[Cite as *State v. Smith*, 2024-Ohio-2919.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230224 |
| | | TRIAL NO. B-2002057 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DEMETRI SMITH, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 2, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of Michele L. Berry, LLC,* and *Michele L. Berry,* for Defendant-Appellant.

**WINKLER, Judge**.

{¶1}    Although defendant-appellant Demetri Smith asserted self-defense at his bench trial, he was convicted of felonious assault with two accompanying gun specifications and having a weapon while under a disability. In this appeal, under four assignments of error, he primarily takes issue with the fact that he was not permitted to present his full defense of self-defense during the state's case-in-chief. He contends that the trial court violated his right to a fair trial by excluding a portion of his statement he made to police and that the court committed plain error by not applying the Castle Doctrine presumption of self-defense when considering his Crim.R. 29 motion for an acquittal and the verdict. He also maintains that his counsel was constitutionally ineffective for failing to raise certain arguments in support of the admission of his full statement during the state's case-in-chief and failing to request the application of the Castle Doctrine presumption. Finally, he asserts that his conviction is against the weight of the evidence given his testimony that he observed the victim with a gun, "about to pull up." However, because our review of the record convinces us that Smith's trial was free from prejudicial error, we affirm the trial court's judgment.

## The Trial

{¶2}    At trial, the evidence demonstrated that Smith had told police that he had taken a "bootleg cab" in the middle of the night to a local hotel in Sharonville, but at trial he testified that his friend, Corliss Steele, had driven him to the hotel. While his friend entered the hotel lobby to get a room, Smith remained in the car, which was parked under the overhang outside the hotel's front entranceway sliding doors. The driver's side of the car was the closest to the hotel's entrance. Soon, a black SUV drove under the overhang, from the opposite direction of the car Smith was in, and initially drove past Smith, but then slowly backed up and stopped. The SUV was located between Smith's car and the hotel entrance. Two people were in the SUV, including

the driver, later identified as Maurice Stubblefield, and the passenger (and victim), later identified as Antonious Carter. The two men stared at Smith, and then Carter nodded at him. Smith told police that he had interpreted this nod to mean "it was on."

{¶3} The passenger of the SUV, Carter, exited from the vehicle while talking to Stubblefield. Smith later told police that Carter had been "messing" with his waistband as he exited from the car. After Carter exited, Smith leaned his car seat (the front passenger seat) all the way back, so his head was near the rear passenger-side window. Carter then walked around the front of the SUV and around the back of Smith's car, and eventually stopped near the rear passenger-side window. Smith turned and fired three shots through the side window, striking Carter in the shoulder. Carter fled across the parking lot, and Stubblefield drove after him. Smith got out of the car and entered the hotel lobby. Thirty-six seconds later, Smith walked back to the hotel entrance and stepped outside. Carter, who was then back in the SUV, fired five shots at Smith through the open car window. At that point, Smith ran back inside the hotel and hid in a third-floor bathroom until the police arrived.

{¶4} The hotel's video-camera footage confirms the positions of the cars under the hotel's overhang, and shows Carter exiting from the SUV, adjusting his waistband, and then walking around the front of the SUV and around the back of Smith's car. Photographs of both cars show heavily-tinted windows and three bullet holes in the rear passenger-side window of Smith's car.

{¶5} During the state's case-in-chief, Detective Keith Issacs, who had interviewed Smith the night of the incident, testified at trial. He said that Smith had told him that after the SUV pulled alongside Smith's car,

> [t]he passenger got out of the vehicle, said something to the driver. The driver said something back to him, the passenger, and then the passenger * * * walked in front of the passenger's vehicle to the rear of Mr. Smith's vehicle on the driver's side. Mr. Smith told us that he

believed that [Carter] was going to pull something and that Mr. Smith said he was ready. I don't remember the exact verbiage, but carrying a ten; and that Mr. Smith turned and fired three shots in the direction of the passenger through the back window.

{¶6} Issacs then testified that Smith had said this incident occurred because of issues "on the street." Smith told Issacs that earlier in the evening, his girlfriend's house had been "shot up." A neighbor observed the gunmen, called Smith to report the incident, and described the facial features of the gunmen. Smith explained to Issacs that he had recognized Carter, based on the neighbor's description, as one of the gunmen who had "shot up" his girlfriend's house.

{¶7} On cross-examination, defense counsel confirmed with Issacs that Smith had said, when explaining what had happened prior to Smith shooting Carter, "[Carter]'s about to pull." Defense counsel then asked Issacs what else Smith had said, but the state objected, explaining that the remaining part of Smith's statement to police (that he had observed Carter's hand on the butt of a gun) was hearsay. Defense counsel did not dispute that the remaining portion of Smith's statement was hearsay, but instead argued that Smith's whole statement should be admitted because the state had "opened the door" by asking Detective Issacs "what [Smith] said about [Carter] approaching his vehicle [and that Issacs] opened the door even further by stating the passenger was about to pull." The trial court sustained the state's objection. Defense counsel then asked Issacs what he had thought Smith meant when saying that Carter was "about to pull." Issacs responded that he thought Smith meant that "[Carter] was going to pull a weapon."

{¶8} The recorded interview between the police and Smith was admitted into evidence, but many parts of the recording are inaudible. At one point during the interview when the police were trying to ascertain how Smith knew Carter, Smith explained that it was because of a description of Carter's facial features. One of the

4

officers asked Smith if the neighbor had described what kind of car the gunmen had driven, and Smith said that Carter was in a "different vehicle" when Smith encountered him later in the evening.

{¶9}    Prior to resting, the state offered the testimony of the police officer who had interviewed Carter and Stubblefield at the hospital.  The officer testified that both Stubblefield and Carter appeared inebriated and could not answer his questions.  Additionally, he noted that Carter's clothes were a distinct neon yellow.

{¶10}    At the close of the state's case, Smith moved for an acquittal, arguing that he had demonstrated self-defense, and that the state had not rebutted or disproved any element of self-defense.  The trial court denied his motion.

{¶11}    Smith testified at trial, asserting that he had shot Carter in self-defense. He said that his friend drove him to the hotel and that his attention was drawn to the black SUV when it had initially pulled past his car but then had backed up, so that the cars were aligned.  He testified that Stubblefield and Carter were both staring at him, and that Carter was fidgeting with something, but he did not know what it was.  He explained that when he had realized Carter did not go into the hotel, he leaned his passenger seat all the way back because he feared that Carter was going to start shooting at him.  Smith explained that he believed that Carter had been one of the gunmen that had fired upon his girlfriend's house. He said that the neighbor did not tell him what type of car the gunmen had been driving and said nothing about their clothing.  He testified that after Carter stopped outside of the rear passenger-side window, Smith turned around, saw Carter clutching a gun, "he was trying to pull it," and fired three shots at Carter.  Smith testified that he was in fear for his life.

{¶12}    After listening to the evidence and reviewing the exhibits, including the recording of Smith's police interview, the trial court determined that Smith had not acted in self-defense, and found him guilty of felonious assault (and the other charged offenses).  The court found that the state's witnesses were credible, and Smith was not,

explaining that there were too many inconsistencies between Smith's trial testimony and his interview with the police and the evidence presented by the state. Specifically, the court did not believe that Smith knew Carter or had recognized him; did not believe that Carter had been the aggressor; and did not believe that Carter had a gun on him at the time Smith shot him. The trial court also pointed out that Smith had originally told the police that he had taken a bootleg cab to the hotel, but at trial testified that a friend had driven him.

{¶13} Smith now appeals.

## Evidentiary Ruling

{¶14} In his first assignment of error, Smith contends that the court's exclusion of part of his statement to police was erroneous because it denied Smith his right "to due process, to confront the state's witnesses, and to present a complete defense." We are unpersuaded.

{¶15} A trial court's ruling as to the admission or exclusion of evidence is within its broad discretion and will not be disturbed absent an abuse of that discretion. *State v. Tomlin*, 63 Ohio St.3d 724, 728, 590 N.E.2d 1253 (1992). An appellate court will not reverse an evidentiary ruling absent a showing that an incorrect ruling affected a party's substantial rights. *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 68, citing *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181.

{¶16} Under this assignment, Smith takes issue with the fact that during Detective Issacs's direct testimony he had testified that "Smith told us that he believed that [the victim] was going to pull something and that Mr. Smith was ready * * * and fired three shots in the direction of [the victim]" but when defense counsel asked Issacs on cross-examination what else Smith had said, the state objected. The remaining part of Smith's statement, which was that Smith had "observed the handle of a pistol on [the victim,]" was excluded as hearsay.

{¶17} Smith does not contest the conclusion that the remaining portion of his statement is hearsay, but argues that the court should have admitted it because the state "opened the door" by asking Detective Issacs what Smith had said about the shooting and by allowing Issacs to testify that Smith had said the victim was about to "pull something." This court has previously considered when evidence should be admitted under an "opened the door" theory, and determined evidence should be admitted under that theory when necessary to cure a prior admission of improper hearsay evidence. *See State v. Griffin*, 142 Ohio App.3d 65, 753 N.E.2d 967 (1st Dist.2001). But Isaacs's testimony that Smith had turned and fired three shots at Carter was not improper hearsay evidence; it was admitted under Evid.R. 801(D)(2) as an admission by a party opponent. Thus, because there was no need to cure any prior improper admission of hearsay evidence, the trial court did not abuse its discretion by rejecting Smith's "opened the door" argument and excluding the remaining part of his statement that he had observed Carter with a gun.

{¶18} This exclusion did not violate Smith's substantial rights—Smith was able to present his full defense of self-defense during his case when he testified that he had observed Carter pulling up on the handle of a gun and he was in fear of his life. Additionally, he was able to confront witnesses against him by questioning Detective Issacs about what the detective had thought it meant when Smith had said that the victim was "about to pull." Issacs testified that he thought it meant that Carter was "about to pull a weapon."

{¶19} For the first time on appeal, Smith argues that Evid.R. 106 permitted the admission of the remaining portion of his statement. But that argument has been waived because it was not raised below. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997) ("A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below."). But

7

even if it had been raised, Evid.R. 106 does not support the conclusion that the trial court erred by excluding the remaining part of Smith's statement.

{¶20} Evid.R. 106, known as the rule of completeness, provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement *which is otherwise admissible* and which ought in fairness to be considered contemporaneously with it." (Emphasis added.) The plain language of Evid.R. 106 limits the rule of completeness to those parts of a statement that are "otherwise admissible." *State v. Singh*, 12th Dist. Butler No. CA2021-12-158, 2022-Ohio-3385, ¶ 32. Smith's exculpatory statement that he had observed the handle of a gun on the victim was hearsay—an out of court statement offered for its truth—and was not "otherwise admissible." Further, the overriding purpose of Evid.R. 106 is to prevent one party from taking statements out of context and distorting them. *State v. Koss*, 10th Dist. Franklin No. 13AP-970, 2014-Ohio-5042, ¶ 32, citing *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003-Ohio-7168, ¶ 26. Smith claims that the exclusion of his whole statement distorted Detective Issacs's testimony about Smith stating that he saw Carter "about to pull" something, and therefore, the remaining part of his statement needed to be admitted into evidence to correct this confusion. But during the state's case-in-chief, Detective Issacs was permitted to testify that he thought that Smith's statement that "Carter was about pull" meant that Carter was about to pull a "weapon." The record here does not indicate that the trier of fact was confused by Issacs's testimony or that an issue in the trial was clearly distorted by the testimony admitted.

{¶21} Finally, Smith argues that the exclusion of the remaining part of his statement violated the Supremacy Clause of Article IV of the United States Constitution by placing evidentiary rules over constitutional protections. Having

8

determined that the trial court's exclusion of the remaining part of Smith's statement did not violate any of Smith's substantial rights, we reject this argument.

{¶22} Based on the foregoing, the first assignment of error is overruled.

## No Plain Error

{¶23} In his second assignment of error, Smith maintains that the court committed plain error by failing to apply the Castle Doctrine presumption (that Smith had acted in self-defense) when considering Smith's Crim.R. 29 motion for an acquittal and, again, at the close of trial when determining Smith's guilt.

{¶24} To establish plain error, "a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 26, citing *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68 27, 759 N.E.2d 1240.

{¶25} In *State v. Robertson*, 1st Dist. Hamilton No. C-220047, 2023-Ohio-2602, ¶ 18, we stated:

> The "Castle Doctrine" creates a presumption that an individual acted in self-defense. *See State v. Jones*, 2022-Ohio-3162, 195 N.E.3d 561, ¶ 18 (2d Dist.). Part of the doctrine is codified in R.C. 2901.05, and creates a rebuttable presumption that a person using deadly force has acted in self-defense "if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force." R.C. 2901.05(B)(2). "When the presumption does exist, the prosecution may rebut it by a preponderance of the evidence and then prove beyond a reasonable doubt that the defendant did not act in self-defense." (Emphasis added.) *Jones* at ¶ 18, citing R.C. 2901.05(B)(4); *see* R.C.

9

2901.05(B)(4) ("The [Castle Doctrine] presumption * * * is a rebuttable presumption and may be rebutted by a preponderance of the evidence, provided that the prosecution's burden of proof remains beyond a reasonable doubt.").

After reviewing the record, we hold that the court did not commit plain error in failing to apply the Castle Doctrine presumption. First, it is not obvious that the presumption even applies here, and it seems not to. While there is testimony and video footage showing Carter walking around the back of Smith's car, there is no evidence that Carter attempted to or entered Smith's car, let alone touched it. Further, the heavily-tinted windows were rolled up so Carter could not even reach in through the window. *See State v. Jones* 2022-Ohio-3162, 195 N.E.3d 561 (2d Dist.) (holding that the Castle Doctrine instruction should have been given because a jury could have found that the victim had unlawfully entered the defendant's vehicle by leaning in and reaching for the defendant).

{¶26} Smith argues that his testimony that he had observed Carter pulling up on the handle of a gun constitutes an attempted unlawful entry into Smith's vehicle, and cites to *State v. Cuthbertson,* 1st Dist. Hamilton No. C-750362, 1976 Ohio App. LEXIS 8575 (June 1, 1976), in support. But *Cuthbertson* does not address self-defense or the Castle Doctrine. Instead, in *Cuthbertson,* this court held that a slight penetration of the space within a building was sufficient to constitute entry in a breaking-and-entering case.

{¶27} Because Smith cannot point to any caselaw, and we can find none, that supports his proposition that seeing a person outside one's vehicle touching the handle of a gun constitutes an attempted entry into one's motor vehicle, he has not shown that the Castle Doctrine presumption was plainly and obviously applicable in this case. Therefore, we cannot say that the trial court committed plain error by failing to apply

that presumption in considering Smith's Crim.R. 29 motion for an acquittal or in considering Smith's guilt. The second assignment of error is overruled.

### No Demonstration of Ineffective Assistance

{¶28} In his third assignment of error, Smith argues that his trial counsel was constitutionally ineffective for failing to argue that the trial court's exclusion of part of his statement to police violated his constitutional rights and that the remaining parts of his statement were admissible under Evid.R. 106. He also contends that his counsel was ineffective for not requesting that the court apply the Castle Doctrine presumption when considering Smith's motion for an acquittal and the verdict.

{¶29} To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate that but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *See Strickland* at 687; *Bradley* at 141-142. The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697; *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 24 (1st Dist.).

{¶30} With respect to Smith's argument that his counsel was ineffective for failing to argue that the exclusion of part of his statement to police violated his constitutional rights, Smith cannot demonstrate prejudice. While Smith was prevented from presenting his full defense of self-defense during the state's case-in-chief, he was permitted to do so during the defense's case, which the trial court considered in determining Smith's guilt. He was also able to confront Detective Issacs and ask him what he had thought it meant when Smith had said that Carter "was about to pull." And Smith has failed to show prejudice from his counsel's failure to argue

11

that Evid.R. 106 supported the admission of the remaining portion of his statement where that argument would have failed, as we previously discussed. Finally, we cannot say that defense counsel's failure to request the application of the Castle Doctrine presumption constituted ineffective assistance where there was no evidence that the victim, although he walked near Smith's car, attempted to or unlawfully entered it. Ultimately, the trial court considered whether Smith had acted in self-defense, and because the court found Smith's testimony—that he recognized the victim and saw the victim with a gun—not credible, it found that Smith had not acted in self-defense as he, not Carter, was the initial aggressor.

{¶31} The third assignment of error is overruled.

## Manifest Weight

{¶32} In his fourth and final assignment, Smith contests the weight of the evidence underlying his convictions. Because Smith only raises arguments pertaining to his felonious-assault conviction, we consider whether his conviction for felonious assault (and not his conviction for having a weapon while under a disability) was against the weight of the evidence.

{¶33} When considering a manifest-weight-of-the-evidence challenge, we must consider whether the state carried its burden of persuasion before the trial court. Unlike the burden of production, which concerns a party's duty to introduce enough evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. Therefore, for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence— which we reserve for only the most exceptional circumstances—we must conclude that the trier of fact disregarded or overlooked compelling evidence that weighed against conviction. *See State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 8.

{¶34} Under this assignment, Smith takes issue with the trial court's finding that he was the initial aggressor. In making that determination, the trial court found

that Smith's testimony that he had recognized Carter and saw him with a gun when he was walking around the car was not credible. In considering this credibility determination, we are guided by the presumption that "a [trier of fact] is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Jones*, 10th Dist. Franklin No. 22AP-209, 2023-Ohio-2855, ¶ 16. Here, the evidence at trial supports the court's credibility determination.

{¶35} First, Smith said that he recognized Carter as one of the gunmen who had shot at his girlfriend's house. However, it seems unlikely that Smith would have immediately recognized someone he has never seen before based on a cursory observation of Carter through heavily-tinted windows and the neighbor's description of Carter's facial features. Further, Smith never explained how Carter's facial features matched the description he was given by the neighbor. And, even though Smith testified that the neighbor had not described what type of car the gunmen had been driving, he had earlier told police that Carter had arrived in a "different vehicle."

{¶36} Next, Smith testified that he saw Carter with his hand on a gun and "about to pull." Although video footage from the hotel's security camera confirms that Carter walked around Smith's car, it does not show that Carter had a gun. Further, when Smith shot Carter, he did not respond with gunfire. Instead, Carter ran away and got back into the black SUV. It was only then that he fired shots at Smith.

{¶37} Based on the foregoing, it is difficult for us to say that the trial court overlooked compelling evidence in finding that Smith was the initial aggressor. Given that the trier of fact is in the best position to judge credibility, we cannot say that the trial court lost its way and created a manifest miscarriage of justice by finding that Smith's self-defense claim was not viable and that Smith, rather than Carter, had been the aggressor. The fourth assignment of error is overruled.

**{¶38}** Having overruled all four assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.