[Cite as *State v. McLaurin*, 2025-Ohio-1213.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

DJUAN D. MCLAURIN,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-28


O P I N I O N

---

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0004

Judgment Affirmed

Date of Decision:  April 7, 2025

---

APPEARANCES:

    *Kristie Gotwald* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

**{¶1}** Defendant-appellant, Djuan D. McLaurin ("McLaurin"), appeals the March 22, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

**{¶2}** On December 31, 2023, McLaurin and his friend Sandros Boddie, Jr. ("Boddie") spent the day drinking alcohol and playing dominoes in McLaurin's garage. Later in the day, McLaurin's son joined in on the drinking and playing dominoes. McLaurin and his son were also smoking marijuana. McLaurin's son is paraplegic and was using an electric scooter that day.

**{¶3}** While playing dominoes, McLaurin and Boddie began to argue over whether cheating was taking place. The argument escalated to where Boddie suggested they go outside and fight. McLaurin responded, "I don't fight." (March 20, 2024 Tr. at 739). McLaurin then took a handgun out of the microwave in the garage and placed it on the table where they were playing dominoes. Boddie told McLaurin that if he was going to shoot him, then shoot him. McLaurin stated he was not going to shoot him, but there would be no more cheating.

**{¶4}** At some point, Boddie took the handgun from the table and hid it inside McLaurin's house. When McLaurin discovered the handgun was missing, he went into his bedroom and got a second handgun. McLaurin threatened to shoot Boddie with the second handgun if Boddie did not return to him the first handgun. Boddie

retrieved the first handgun from inside the house and gave it to McLaurin. McLaurin then had his son disassemble the second handgun. McLaurin put the magazine to the second handgun in his pocket and held on to the first handgun.

{¶5} McLaurin and Boddie continued to argue. Boddie got up from the table and started to leave the garage through the overhead garage door. McLaurin went over to the garage door and locked it. According to McLaurin's trial testimony, Boddie then took a "fighting stance" with "a cup in [his] hand" and stated, "If you gonna shoot me, shoot me now or I'm fittin to go." (March 20, 2024 Tr. at 744-745). When Boddie "lunged" at McLaurin, McLaurin shot him once in the head from about three feet away. (*Id.* at 745).

{¶6} McLaurin then pointed the handgun at his son and pulled the trigger. The handgun malfunctioned. McLaurin and his son tussled for the handgun. McLaurin pulled his son off the electric scooter and attempted to strangle him. The commotion in the garage awoke the son's girlfriend and she called 911. When law enforcement arrived, McLaurin was on top of his son. McLaurin was arrested.

{¶7} On January 9, 2024, the Allen County Grand Jury indicted McLaurin on Count One of murder in violation of R.C. 2903.02(A), (D), and 2929.02(B), an unclassified felony; Count Two of murder in violation of R.C. 2903.02(B), (D), and 2929.02(B), an unclassified felony; and Count Three of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a second-degree felony. The indictment contained a firearm specification of three years as to each count. On January 19,

2024, McLaurin waived his right to arraignment and entered written pleas of not guilty, which the trial court accepted.

{¶8} On February 16, 2024, McLaurin filed a notice of self-defense under Crim.R. 12.2 stating "that he acted in self defense from an attack by the alleged victim." (Doc. No. 24).

{¶9} The case proceeded to a three-day jury trial on March 18-20, 2024. On March 20, 2024, the jury found McLaurin guilty of Counts One, Two, and Three of the indictment, and guilty of the firearm specification as to each count. The trial court proceeded directly to sentencing.[1]

{¶10} For purposes of sentencing, the trial court merged Counts One and Two and sentenced McLaurin to an indefinite term of 15 years to life on Count One, an indefinite term of eight to 12 years in prison on Count Three, and stacked the three-year firearm specification as to each count. The trial court then ordered the sentences to be served consecutively for an aggregate prison term of 32 to 36 years, with the possibility of life imprisonment on Count One.

{¶11} McLaurin filed his notice of appeal on April 2, 2024. McLaurin raises two assignments of error for our review. For ease of discussion, we will address both assignments of error together.

---

[1] The trial court filed its judgment entry of sentencing on March 22, 2024.

**First Assignment of Error**

**Appellant was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution due to trial counsel's failure to include specific jury instructions.**

**Second Assignment of Error**

**Appellant was denied effective assistance of counsel due to trial counsel's failure to subject the prosecution's case to meaningful adversarial testing.**

{¶12} In both assignments of error, McLaurin argues that he was denied his constitutional right to effective assistance of counsel. In his first assignment of error, McLaurin argues that his trial counsel was ineffective for not requesting a jury instruction on the castle doctrine. In his second assignment of error, McLaurin argues that his trial counsel's performance as a whole was ineffective and "failed to be a meaningful adversary to the State" such that prejudice should be presumed. (Appellant's Brief at 17).

*Standard of Review*

{¶13} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) his counsel's performance was deficient or unreasonable under the circumstances, and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Reversal of a conviction or sentence based on a claim of ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to

make either showing is fatal to the claim. *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

{¶14} In order to show counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 688-689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Moreover, "the failure to request a particular jury instruction or the failure to object to a trial court's jury instruction is a matter of trial strategy." *State v. Chavez*, 2020-Ohio-426, ¶ 63 (3d Dist.).

{¶15} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Liles*, 2014-Ohio-259 at ¶ 48, quoting *Bradley*, 42 Ohio St.3d at 142.

*Analysis*

**{¶16}** In his first assignment of error, McLaurin argues that he received ineffective assistance of counsel because his trial counsel failed to request a jury instruction on the castle doctrine. Specifically, McLaurin argues that his trial counsel should have requested a jury instruction stating (1) that McLaurin is entitled to a presumption of self-defense under R.C. 2901.05(B)(2) since the shooting occurred in his residence; and (2) that McLaurin had no duty to retreat under R.C. 2901.09 and the jury must not consider the possibility of retreat as a factor in determining whether McLaurin reasonably believed that deadly force was necessary to defend himself.

**{¶17}** McLaurin further argues that he was prejudiced by his trial counsel's failure to request a jury instruction on the castle doctrine since "[i]t is impossible to determine whether the jury contemplated whether [McLaurin] had to retreat because there was no instruction telling them not to." (Appellant's Brief at 10).

**{¶18}** The self-defense claim is set forth at R.C. 2901.05. Specifically, R.C. 2901.05(B)(1) provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that *tends to support* that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

(Emphasis added.)  Thus, under R.C. 2901.05(B)(1), "a defendant claiming self-defense has the burden of production—that is, the burden of producing evidence that 'tends to support' his use of force in defending himself." *State v. Estelle*, 2021-Ohio-2636, ¶ 18 (3d Dist.).  If the defendant produces evidence tending to support a self-defense claim, then the prosecution must prove beyond a reasonable doubt that the accused did not act in self-defense." *Id*.

**{¶19}** "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *State v. Eddy*, 2022-Ohio-3965, ¶ 14 (3d Dist.).  "The use of a gun constitutes the use of deadly force." *State v. Dale*, 2013-Ohio-2229, ¶ 15 (2d Dist.).

**{¶20}** The elements of a self-defense claim involving deadly force are

> "(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger."

(Bracketed text in original.)  *State v. Messenger*, 2022-Ohio-4562, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).  "[T]he State must 'disprove at least one of the elements of self-defense beyond a reasonable doubt.'" *State v. Passmore*, 2023-Ohio-3209, ¶ 29 (3d Dist.), quoting *State v. Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.). "The elements of self-defense are cumulative, and a defendant's claim

of self-defense fails if any one of the elements is not present." *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.).

**{¶21}** In this case, the trial court gave the jury the following instruction regarding McLaurin's self-defense claim:

**SELF DEFENSE**

The defendant claims he acted in self-defense. The defendant is allowed to use deadly force in self-defense. The state must prove beyond a reasonable doubt that the defendant, when using deadly force, did not act in self-defense.

To prove that the defendant, when using deadly force, did not act in self-defense, the state must prove beyond a reasonable doubt at least one of the following:

(A) the defendant was at fault in creating the situation giving rise to his shooting of Sandros Boddie, Jr., as alleged in Count One (1); or

(B) the defendant did not have reasonable grounds to believe that he was in imminent or immediate danger of death or great bodily harm; or

(C) the defendant did not have an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm; or

(D) the defendant used unreasonable force.

There is no requirement that the jury be unanimous as to which of the above you believe the State disproved.

(Doc. No. 64). The foregoing instruction makes no mention of the castle doctrine.

**{¶22}** The castle doctrine creates a presumption that an individual acted in self-defense. *See State v. Smith*, 2024-Ohio-2919, ¶ 25 (2d Dist.). Part of the castle

-9-

doctrine is codified in R.C. 2901.05 and creates a rebuttable presumption that a person using deadly force has acted in self-defense "if the person against whom the defensive force is used *is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered*, the residence or vehicle occupied by the person using the defensive force." (Emphasis added.) R.C. 2901.05(B)(2).

{¶23} The "stand your ground" provision of the castle doctrine is codified in R.C. 2901.09 and provides that "a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person *lawfully has a right to be*." (Emphasis added.) R.C. 2901.09(B). *See State v. James*, 2024-Ohio-621, ¶ 37-38 (12th Dist.).

{¶24} After reviewing the record, we conclude that McLaurin's counsel was not ineffective for failing to request a jury instruction on the castle doctrine. First, it appears that the castle doctrine does not apply here in light of the evidence presented at trial. While there is no dispute that McLaurin "lawfully ha[d] a right to be" in his garage the night he shot Boddie, there is no evidence that Boddie was "unlawfully and without privilege" to be there as well. R.C. 2901.09(B); R.C. 2901.05(B)(2). In fact, McLaurin testified that he and Boddie regularly had "session[s]" in his garage where they would spend the day drinking and playing dominoes. (March 20, 2024 Tr. at 731). McLaurin further testified that he sent a text message to Boddie the day before about having a "session" on December 31,

2023. (*Id.* at 732). In the absence of any evidence of an unlawful entry of McLaurin's garage on the part of Boddie, McLaurin's trial counsel was not ineffective for failing to request a jury instruction on the castle doctrine. *See Smith*, 2024-Ohio-2919, at ¶ 25 (1st Dist.).

{¶25} Second, we note that a jury instruction on the castle doctrine is typically given in cases involving a home invasion scenario. The evidence in this case shows that McLaurin shot Boddie when he was attempting to leave McLaurin's garage after an all-day marathon of drinking and playing dominoes. In particular, McLaurin testified that, when Boddie went to the overhead garage door to leave, "I come up there to lock the garage door." (*Id.* at 744). On direct examination, McLaurin was asked why he shot Boddie. McLaurin stated,

> Because he was in a fighting stance and lunged at me and even though he knew I had a pistol in my hand, he knew everything, he knew, even though I had a pistol in my hand, he knew that if he lunged at me I would fire it but all he wanted to do was lunge at me just to see what would I do.

(March 30, 2024 Tr. 752). Critically, McLaurin did not testify that he believed that he was in imminent or immediate danger of death or great bodily harm to justify the use of deadly force.

{¶26} Based on the foregoing, we conclude that McLaurin has failed to establish that his trial counsel's performance was deficient or unreasonable for not requesting a jury instruction on the castle doctrine. Further, McLaurin has not

established how a jury instruction on the castle doctrine would have changed the outcome of his trial. *See Chavez*, 2020-Ohio-426, at ¶ 79-80 (3d Dist.).

**{¶27}** In his second assignment of error, McLaurin argues that his trial counsel's performance was wholly ineffective because counsel failed to subject the State's case to meaningful adversarial testing. Among other claims, McLaurin contends that his trial counsel did not know the law on a self-defense claim, did not ask the right questions of witnesses to put on a self-defense argument, did not impeach the testimony of any witnesses, and did not deliver an effective closing argument. With all these alleged failures, McLaurin argues that he did not receive a fair trial such that prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648, 659 (1984).

**{¶28}** In *Cronic*, the United States Supreme Court stated that "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." (Emphasis added.) *Cronic*, 466 U.S. at 659. "'[I]n rare situations when counsel has done nothing more in the preparation of the case than be a warm body, prejudice is presumed.'" *State v. Watkins*, 2018-Ohio-4722, ¶ 16 (3d Dist.), quoting *State v. Blair*, 2007-Ohio-2417, ¶ 13 (2d Dist.), citing *Cronic* at 659-660.

**{¶29}** Here, the record reveals that McLaurin's trial counsel was more than a "warm body" at trial. McLaurin was represented by counsel who, among other

things, cross-examined witnesses; made a Crim.R. 29 motion at the conclusion of the State's case-in-chief and renewed the motion after the defense rested; made an opening statement before McLaurin testified; and made a closing argument. Perhaps most critical to McLaurin's defense is that his trial counsel requested a jury instruction on McLaurin's self-defense claim. Even though McLaurin is not satisfied with his trial counsel's performance, we conclude that the alleged deficient performance by trial counsel here does not fall within the narrow exception envisioned by *Cronic*.

{¶30} McLaurin's first and second assignments of error are overruled.

{¶31} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in his assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WALDICK, P.J. and MILLER, J., concur.**

**/hls**